IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01513-WJM-CBS

JONATHON YOUNG, SR.,
        Plaintiff,
v.

[DEPUTY JASON] BROCK, and
[DEPUTY FNU] JAEGER,
        Defendants.

---

RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

---

Magistrate Judge Shaffer

        This civil action comes before the court on Defendants' Motion to Dismiss Plaintiffs'

Second Amended Complaint (doc. #79), filed on February 4, 2011.  Plaintiff Young filed his

"Reply to Document [79] Motion to Dismiss Plaintiff's Second Amended Complaint by

Defendants/Exhibits A-3 and A-4" (doc. #95) on April 1, 2011, which was followed by

Defendants "Response to Plaintiff's Reply [Document 95] to Defendants' Motion to Dismiss"

(doc. #96) on April 11, 2011.

        With an Order of Reference (doc. #32) dated October 1, 2010, this action was referred to

the Magistrate Judge to conduct all proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).

The instant motion was referred to this court on February 7, 2011.  I addressed the pending

motion to dismiss during proceedings on August 9, 2011.  I have carefully considered the

parties' briefs, the entire court file, and the applicable case law.   Following the proceedings on

August 9, 2011, I reconsidered that body of information in light of the comments made by

Plaintiff Young and defense counsel. For the following reasons, I recommend that Defendants'

1

motion be granted in part and denied in part.

## PROCEDURAL HISTORY

A review of the procedural history of this case is essential to place the pending motion to dismiss in context. *Pro se* Plaintiff Jonathon Young, Sr. commenced this action on June 28, 2010 by filing his original Complaint (doc. #3). At that time, Mr. Young was a pretrial detainee in the El Paso County Jail, a facility also known as the El Paso County Criminal Justice Center or "CJC." Plaintiff's original Complaint asserted two claims for relief: "Violation of Religious Rights" and "Due Process and Equal Protection." The original Complaint named as defendants Programs Manager Fran LePage,[1] Lieutenant (FNU) Brandt, Sergeant T.E. Williams, Deputy (FNU) Hightshoe, Deputy (FNU) Lundstrum, and Deputy (FNU) Krull. On July 15, 2010, Magistrate Judge Boland entered an Order Directing Plaintiff to File Amended Complaint (doc. #8). Mr. Young was advised his original Complaint did not comply with Fed. R.Civ. P. 8, to the extent the pleading did not set forth "a generalized statement of the facts from which the defendant may form a responsive pleading." Plaintiff was told his Amended Complaint "must explain what each defendant did to him . . . ; when the defendant did it; how the defendant's action harmed him . . . ; and, what specific legal right [he] believes the defendant violated."

Mr. Young filed his Amended Complaint (doc. #21) on September 15, 2010. This pleading named seventeen defendants, including Ms. LePage, Lieutenant Brandt, and Deputies Hightshoe, Williams, Lundstrum and Krull. The First Claim for Relief in the Amended Complaint included various subparts but generally alleged a violation of Plaintiff's First Amendment rights. Mr. Young asserted that Defendant LePage had infringed upon his "Free

---

[1]The court and Mr. Young have been advised the proper spelling is "LePage."

Exercise" right under the First Amendment by requiring him to sign an agreement indicating his intention to participate in Ramadan, by serving food during Ramadan that did not comply with his religious beliefs, and later by denying his request to be removed from the Ramadan meal service.  In the same claim, Plaintiff alleged that Defendant Hightshoe had violated the First Amendment by removing a shower curtain which prevented Mr. Young from taking a cleansing shower required by his religion, and by asking inmates in the El Paso County Jail to observe a moment of silence for the September 11, 2001 victims.  The Second Claim for Relief in the Amended Complaint alleged violations of the Fourteenth Amendment to the extent Defendant LePage improperly removed Plaintiff's name from the law library access list, denied him access to indigent legal supplies, and removed him from the Ramadan diet without any due process. The Second Claim also alleged that Defendant O'Neal violated Plaintiff's due process rights by placing him in administrative segregation without first providing a hearing.  In his Prayer for Relief, Mr. Young requested monetary damages, injunctive relief, and an order requiring that El Paso County Jail "conditions and rules that violate the federal constitution's (sic) of this county to be changed and inforced (sic)."[2]

On September 23, 2010, District Judge Brimmer issued an Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge (doc. #23).  Judge Brimmer dismissed from the action all defendants except Fran LePage, Deputy Hightshoe and Liz O'Neal, but permitted Mr. Young to proceed on the two claims for relief set forth in the September 15,

---

[2]In the same Amended Complaint, Mr. Young indicated an intention to join additional claims once he obtained essential information and documents.  Plaintiff asserted that "Claim Three will be about Retaliation & Threats, Claim Four physical abuse/excessive force, and claim five sexual abuse."

2010   Amended Complaint.

Defendants LePage, Hightshoe and O'Neal filed a Motion to Dismiss (doc. #47) on

December 3, 2010.  In their motion pursuant to Fed. R.Civ. P. 12(b)(6) , Defendants argued that

the Amended Complaint failed to state a claim for relief under the "Establishment" and "Free

Exercise" Clauses of the First Amendment or the Fourteenth Amendment.  This court issued an

Order (doc. #49) on December 7, 2010 directing Mr. Young to file any response to Defendants'

Motion to Dismiss on or before January 5, 2011.

On December 10, 2010, Plaintiff filed a Motion Requesting to Proceed with

Supplemental Pleading (doc. #52), along with a proposed Supplemental Pleading (doc. #52-1).

The Supplemental Pleading alleged as a "first pleading" that on July 26, 2010, Deputy Brock

used "excessive force" against Mr. Young.  The "second pleading" of the Supplemental Pleading

alleged that on July 30, 2010, Plaintiff was subjected to "sexual contact/abuse, harassment and

threats" from Deputy Jaeger.  The "third pleading" of the Supplemental Pleading alleged that

Mr. Young had been "deprived of personal property by way of destruction of property under the

First, Fifth and Fourteenth Amendment" by "Detention Specialist Hart."  Finally, the

Supplemental Pleading suggested that Mr. Young "has many medical issues which have been

neglected" by the medical staff employed at the El Paso County Jail and that unspecified

deputies had denied the Plaintiff's "right to be seen by medical staff when medical emergency

request are made."

On December 23, 2010, before the court could even rule on Plaintiff's  Motion

Requesting to Proceed with Supplemental Pleading, Defendants LePage, Hightshoe and O'Neal[3] filed a "Motion to Dismiss Plaintiff's 'Supplemental Pleadings' (Amended Complaint)" (doc. #60). In support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Defendants tendered several exhibits. I directed Mr. Young to file his response to the Motion to Dismiss Plaintiff's Supplemental Pleading on or before January 27, 2011.

Plaintiff responded to Defendants' initial Motion to Dismiss with a Reply to Defendants (doc. #67) filed on January 4, 2011. Attached to that Reply were several exhibits.

In an effort to bring some order to this lawsuit, this court conducted a status conference on the record on January 7, 2011. At that proceeding, attended by defense counsel and Mr Young via telephone, I expressed some frustration with the current posture of the case. The court noted that this action could not proceed efficiently given Plaintiff's piece-meal approach to asserting his claims, which had resulted in successive pleadings and multiple motions to dismiss. I granted Plaintiff leave to file yet another amended complaint that gets "everything in one" pleading and "sets forth all of your claims for relief." Once that amended complaint was filed, Defendants would be a position to file a single motion to dismiss. To achieve this objective, I denied without prejudice Defendants' Motion to Dismiss (doc. # 47), denied without prejudice Defendants' Motion to Dismiss Plaintiff's "Supplemental Pleading" (doc. #60), and denied Plaintiff's Motion Requesting to Proceed with Supplemental Pleading (doc. #52). Plaintiff was directed to file an all-encompassing Second Amended Complaint on or before January 21, 2011.

On January 11, 2011, Plaintiff filed a Motion for Request to File Complaint and for

---

[3]At this point, Deputies Brock and Jaeger and Detention Specialist Hart had not been served and had not waived service under Fed. R. Civ. P. 4.

Extention (sic) of Time (doc. #70).  Mr. Young explained that "I would like to go ahead and submit the complaint your honor spoke about if this court will still allow me to."  The Motion went on to say that the impending "complaint must be separated into 3 claims as there are three separate issues in the supplemental pleading that the complaint will be replacing."

Plaintiff filed his Second Amended Complaint (doc. #75) on January 21, 2011.[4]  This pleading named as Defendants Fran LePage, Liz O'Neal, Deputy Hightshoe, Deputy Brock, Deputy Jaeger and Detention Specialist Hart.  However, the Second Amended Complaint started with "Claim Three" which alleged an unconstitutional use of force by Deputy Brock, followed by "Claim Four" which accused Deputy Jaeger of sexual abuse in violation of the Fourteenth Amendment, and "Claim Five" which alleged a deprivation of private property in violation of the First, Fifth and Fourteenth Amendments committed by Detention Specialist Hart.  In sum, the Second Amended Complaint reiterated the allegations in the Supplemental Pleading but did not specifically re-state the claims for relief against Defendants LePage, O'Neal and Hightshoe as set forth in the First Amended Complaint.

Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint (doc. #75) on February 4, 2011.  Defendants correctly noted that Mr. Young had been instructed to file an amended pleading that included all of the claims Plaintiff wished to pursue in this case.  Defendants presumed, therefore, that Mr. Young was dismissing the earlier claims against Defendants LePage, O'Neal and Hightshoe.  *Cf. Franklin v. Kansas Department of Corrections*, 160 Fed. Appx. 730, 734 (10th Cir. 2005) ("An amended complaint supersedes the original

---

[4]Although Mr. Young denominated his January 21, 2011 as "Complaint Three," the pleading is more accurately identified as the Second Amended Complaint since this court denied Plaintiff's request to "Proceed with Supplemental Pleading," thereby nullifying that submission.

complaint and renders the original complaint of no legal effect.  Consequently, once the second

amended complaint was accepted for filing, the district court did not err in examining only those

claims that were included in [plaintiff's] second amended complaint.") (internal citations

omitted).  As for the claims against Defendants Brock and Jaeger, the Motion to Dismiss argued

that Plaintiff had failed to state claims for which relief could be granted.

Mr. Young responded to the latest Motion to Dismiss by filing a Reply (doc. #95) on

April 1, 2011.  In his response, Plaintiff asserted that following his transfer from El Paso County

Jail, he did not have all of his legal paperwork and therefore could not give "a complete and

correct reply to the defendants second motion to dismiss."  Mr. Young advised the court,

however, that "the reply to the defendants response to the supplement pleading that was filed in

this court by the plaintiff could also serve as a reply to the defendants['] second motion to

dismiss as it deals with the same amended complaints at hand."[5]

Once again, in an effort to clarify the procedural posture of this case, I held a status

conference on August 9, 2011.  At that time, Mr. Young voluntarily withdrew Claims One and

Two against Defendants LePage, Hightshoe and O'Neal as set forth in the Amended Complaint

and Claim Five against Defendant Hart included in the Second Amended Complaint.[6]  *See*

---

[5]Even in the absence of a formal response, the court could not treat the pending Motion to Dismiss as confessed by the Plaintiff.  *See Michel v. Immigration and Naturalization Service*, 119 F. Supp. 2d 485, 486 (M.D. Pa. 2000) (the district court may not grant a motion to dismiss under Rule 12(b)(6) solely because the motion was unopposed; the motion to dismiss must be reviewed on its merits).

[6]Consistent with Fed. R. Civ. P. 41(a), I am treating these claims as withdrawn without prejudice.  Mr. Young should recognize, however, that refiling these same claims against Ms. LePage, Ms. O'Neal and Deputy Hightshoe could result in an order requiring Mr. Young to repay all or pay of the costs of the previous action against those same individuals.  *See* Fed. R. Civ. P. 41(d).

Courtroom Minutes/Minute Order (doc. #106).  Mr. Young stated that he was withdrawing these

claims, in part, because he was no longer detained in the El Paso County Jail and recognized that

his recent transfer to Sterling Correctional Facility and the custody of the Colorado Department

of Corrections effectively mooted his request for injunctive relief as to the policies and

procedures of the El Paso County Jail.[7]  Mr. Young acknowledged that he would be proceeding

in this case only as to Claims Three and Four of the Second Amended Complaint and Defendants

Brock and Jaeger, respectively.  As I indicated during the status conference on August 9, 2011,

my initial inclination was to deny the Motion to Dismiss as to both remaining claims.  Since the

status conference, I have gone back through the entire file and done additional research on my

own.  This Recommendation reflects that additional analysis.

## ANALYSIS

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim

upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under

Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view

these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 2010 WL

437335, at *3 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic

recitation of the elements of a cause of action will not do."  *See Bell Atlantic Corp. v. Twombly*,

---

[7]*See, e.g., Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (holding that a *pro se* prisoner's request for injunctive relief relating to a particular prison's policies and procedures governing kosher meals became moot after the prisoner was transferred to a new facility).

550 U.S. 544, 555 (2007).[8]

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."  *Id.*  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007),

> the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

"The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 555 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation.  *Id.*

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted.  For a complaint to state a claim it must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Rule 8(a)'s short and plain statement mandate requires that a plaintiff allege enough factual matter that, taken as true, makes his claim to relief . . . plausible on its face.

The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.  In doing so, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  However, the Court need not accept conclusory allegations.

Generally, [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.  However, where the well-pleaded facts do not permit the court to infer more than

---

[8]It must also be noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, _ U.S. _, 129 S.Ct. 1937, 1949-50 (2009).

the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief. Even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. The plausibility standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, 2009 WL 2924777, at *2 (D. Colo. 2009) (internal quotation marks and citations omitted).

While *pro se* pleadings should be "construed liberally and held to a less stringent standard than formal proceedings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), that standard does not override a *pro se* plaintiff's responsibility to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C.). This court cannot be a *pro se* litigant's advocate. *Hall v. Bellmon*, 935 F.2d at 1110. Just as importantly, the court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not asserted. *Associated General Contractors of California., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

     A.    *The Claim Against Defendant Brock*

The Second Amended Complaint alleges that on July 26, 2010, Defendant Brock used excessive force after handcuffing Mr. Young and while escorting Plaintiff from his cell block. According to Mr. Young, the incident started after he complained to Deputy Brock about his lunch. When Defendant Brock failed to address this complaint in a manner that Plaintiff felt was

10

appropriate, Mr. Young admittedly responded with an obscene epithet.  Shortly thereafter,

Deputy Brock returned to Mr. Young's cell and told him to "cuff-up."  After handcuffing

Plaintiff without objection or resistence, Defendant Brock allegedly began "pulling [Mr.

Young's] hands way above my head causing me great pain."  Once outside the view of other

inmates, "Brock started plying (sic) more upward pressure making the pain unbearable and it

impossible to walk."  Plaintiff claims that he collapsed to the floor, at which point Deputy Brock

ordered that he get up.  When Mr. Young said he could not, "Brock then fell on my back pulled

me feet up behind me and grabbed my hair and started beating my head into the floor screaming

stop resisting."  The Second Amended Complaint alleges that Deputy Brock used force "without

cause."

Defendant Brock contends that any force he used was appropriate in response to

Plaintiff's resistence and refusal to walk.  According to Defendant Brock, any injuries that Mr.

Young sustained were solely the result of his own actions in "continuing to thrash as he was

being removed from the ward" and "bang[ing] his own head on the floor."

The parties have submitted materials beyond the pleadings, including videotapes and

affidavits from purported witnesses, in an effort to bolster their respective positions.  For

example, Defendant Brock has asked the court to "dismiss" Mr. Young's Third Claim for Relief

based in part on an affidavit from Edward Kafel, a Training Deputy with the El Paso County

Sheriff's Office, who purports to offer opinions regarding the "reasonableness" of the force used

by deputies.  *See* Exhibit A-6 (doc. #79-6) attached to Defendants' Motion to Dismiss Plaintiff's

Second Amended Complaint.  Plaintiff Young has attached to his Second Amended Complaint

affidavits from several prisoners who claim to have relevant knowledge regarding his altercation

with Deputy Brock or his physical injuries. *See* Exhibit A-2 (doc. #75-1) attached to Plaintiff's Second Amended Complaint. *Cf. Harrison v. Byrd*, 765 F.2d 501, 504 (5th Cir. 1985) (the inmate-plaintiff's affidavit described in detail a beating that was disproportionate to the degree of force required; these allegations created an issue of fact that precluded summary judgment as to the claim for excessive force). Plaintiff also readily dismisses the videotape evidence proffered by Deputy Brock, suggesting that the most salient portions of the incident occurred in a hallway conveniently off camera. At the very least, the extraneous materials provided by the parties present very different scenarios. *Cf. Arrington ex rel. Arrington v. City of Davenport*, 240 F. Supp. 2d 984, 991 (S.D. Iowa 2003) (in a case alleging excessive force, the court denied defendants' motion for summary judgment after concluding that competing affidavits raised an issue of fact regarding the degree of force used and the resulting actual injury). *See also Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (held that the trial court improperly granted summary judgment in favor of the defendant guards on plaintiff's claim for excessive force where the affidavits presented by the parties present a clear conflict in the evidence).

Rule 12(d) provides that "if matters outside the pleadings are presented to *and not excluded by the court*," a motion to dismiss pursuant to Rule 12(b)(6) must be treated as one for summary judgment under Fed. R.Civ. P. 56. *See* Fed. R. Civ. P. 12(d). The Tenth Circuit has acknowledged a trial court's considerable discretion under Rule 12(d) in determining whether to accept materials beyond the pleadings. *See, e.g., Lowe v. Town of Fairland, Oklahoma*, 143 F.3d 1378, 1381 (10th Cir. 1998). I note the parties still are in the preliminary phase of the litigation and have not pursued any formal discovery. I am loath to address the factual disputes identified by the parties without the benefit of discovery. *Cf. Kelly v. Huntington Union Free School*

*District*, 675 F. Supp. 2d 283, 289 (E.D.N.Y. 2009); *Ace American Insurance Co. v. Huntsman Corp.*, 255 F.R.D. 179, 189-90 (S.D. Tex. 2008).  Accordingly, in preparing this Recommendation, I have not taken into consideration the extraneous exhibits submitted in conjunction with the parties' briefing on the pending motion to dismiss and will exclude those materials from my analysis.  I decline to convert the pending motion to dismiss into a motion for summary judgment.  Defendant Brock's motion to dismiss must succeed or fail under a Rule 12(b)(6) standard.

In a case where a pretrial detainee is alleging the use of excessive force by a non-federal correctional officer, the court must look to the Due Process Clause of the Fourteenth Amendment, which protects against arbitrary governmental action by state authorities.  *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010).  *See also Thompson v. Hamilton*, 127 F.3d 1109, at *1 (10th Cir. 1997) ("Pretrial detainees are protected from excessive force that amounts to punishment under the Due Process Clause of the Fourteenth Amendment.").

> In these circumstances, our precedent instructs us to focus on three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor."  We've also said that "[f]orce inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience may be redressed under the Fourteenth Amendment."

*Porro v. Barnes*, 624 F.3d at 1326 (internal citations omitted).  *But see Weimer v. Schraeder*, 952 F.2d 336, 340 (10th Cir. 1991) (noting that a "negligent act evincing only a lack of due care by a government official . . . does not warrant Fourteenth Amendment protections").

The court also can look for guidance from excessive force cases brought by post-conviction prisoners under the Eighth Amendment.  *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of

unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims."). For purposes of the Eighth Amendment, "[t]he relevant inquiry is whether the force applied was excessive under the circumstances, or malicious and sadistic." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1224 (D. Colo. 2001). "To determine whether defendants could plausibly have thought that their use of force was necessary, the Court must consider the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Jackson v. Austin*, 241 F. Supp. 2d 1313, 1318 (D. Kan. 2003) (citation omitted).

        Taken in the light most favorable to Mr. Young as required, the factual allegations in the Second Amended Complain call into question the need for Defendant Brock's application of force and the extent of any resistence offered by Plaintiff. Mr. Young's allegations could support an inference of wantonness, while Deputy Brock's motion at best raises a factual dispute. *See Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) ("[A] prisoner who alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, states an Eighth Amendment claim on which he is entitled to present evidence."); *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) ("Although appellant's excessive force claim is weak and his evidence extremely thin, dismissal of the excessive force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him."); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir. 1984) (based on evidence that defendant struck plaintiff on the face without cause and shoved him into a wall while he was

14

handcuffed, a jury could conclude that defendant used excessive force), *cert. granted, judgment vacated on other grounds*, 474 U.S. 805 (1985); *Bafford v. Nelson*, 241 F. Supp. 2d 1192, 1194, 1202 (D. Kan. 2002) (an allegation that defendant punched plaintiff several times in the back of the head after plaintiff was restrained and posed no apparent disciplinary threat could establish a reasonable inference that defendant "used force maliciously and sadistically for the very purpose of causing harm"); *Merritt v. Hawk*, 153 F. Supp. 2d at 1224 (plaintiff's allegations that prison guards "body-slammed him against walls and the floor, kicked, punched, and choked him, and slammed his head into walls, while he was handcuffed" were "sufficient to allow a reasonable jury to infer defendants were acting with malicious and sadistic intent").

While this court expresses no opinion about the ultimate merits of Mr. Young's claim against Deputy Brock, I cannot recommend dismissal on the basis of the allegations in the Second Amended Complaint. This claim is more appropriately resolved on motion for summary judgment after an opportunity for discovery or at trial.

B.      *The Claim Against Defendant Jaeger*

The Second Amended Complaint alleges that on or about July 30, 2010, Plaintiff was subjected to a pat-down search administered by Defendant Jaeger. During this search, Defendant Jaeger allegedly "ran his open inside hand across [Mr. Young's] genitals." When Plaintiff asked not to be "touched there," Defendant Jaeger purportedly said "I'll touch you anywhere I damned well please" and then "began fondling and squeezing [Plaintiff's] genitals." According to Plaintiff, "there was no need for [Deputy] Jaeger to remove his hand from my intimate parts then replace it back on my genitals and fondling and squeezing them for longer than it would take to do a routine pat search." Mr. Young contends that during this incident

15

Defendant Jaeger's tone of voice "was very frightening and threatening." The Fourth Claim for Relief alleges that Plaintiff was subjected to a "sexual assault" in violation of the Fourteenth Amendment. Defendant Jaeger has moved to dismiss this claim citing Mr. Young's failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In the alternative, Defendant Jaeger contends that Plaintiff has failed to state a claim upon which relief may be granted.

Prior to filing this civil action, Mr. Young was required to exhaust administrative remedies pursuant to the PLRA. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is undisputed that Mr. Young did not file a formal grievance or a formal grievance appeal challenging the July 30, 2010 pat-down. Plaintiff contends that when he requested grievance forms, he was told that Defendant Jaeger's conduct was not grievable and was threatened with retaliation if he continued to pursue the matter. Mr. Young attached to the Second Amended Complaint "kites" that he submitted on July 31, 210, August 7, 2010, August 24, 2010, and September 9, 2010 regarding the incident with Defendant Jaeger. *See* Exhibit A-2 (doc. #75-2) attached to Plaintiff's Second Amended Complaint. Mr. Young specifically asked for a grievance form on August 7, 2010. In response to an August 26, 2010 kite, Plaintiff was told Defendant Jaeger's pat-down search was "not sexual assault" and "was then and still is non-grievable as this is expected to be done." *But see Booth v. Churner*, 532 U.S. at 741 n.6 (declining to find a "futility" exception to the exhaustion requirement); *Fletcher v. Menard*

16

*Correctional Center*, 623 .3d 1171, 1173 (7th Cir. 2010) (holding that an inmate's belief that exhaustion would be futile does not create an exception to the duty to exhaust). Mr. Young's September 9, 2010 kite was returned with the notation "this issue has been addressed sufficiently as far as [the responding officer is] concerned. Your complaint is frivolous and untrue."

"The PLRA's exhaustion requirement is designed to 'afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) ("a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought") (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). *See also Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006) ("inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures") (quoting *Johnson v. Testman*, 380 F.3d at 697), *overruled on other grounds by Robbins v. Oklahoma,* 519 F.3d at1242. While Mr. Young chose not to classify his submissions as "grievances," his kites certainty identified the alleged wrongdoer, described the "unconstitutional" conduct at issue, and went so far as to request that jail authorities preserve video tape evidence that Mr. Young "will be using  . . . in court." Moreover, the several responses to Mr. Young's kites emphatically stated that "no sexual harassment occurred;" this was an appropriate pat search;" "this has been addressed sufficiently . . . [y[]our complaint is frivolous and untrue;" or "I have told you numerous times having your groin area touched during a pat down search is not sexual assault." Jail authorities could not plausibly argue that they did not have notice of Mr. Young's complaint or adequate opportunities to investigate his allegation against Defendant Jaeger before the Second Amended Complaint was filed. When viewed from a practical perspective, I am hard-pressed to find that

jail officials were denied an opportunity to investigate and administratively address Mr. Young's accusation against Deputy Jaeger.

However, it is also well-established that "exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper exhaustion" of administrative remedies, which means the plaintiff must utilize all administrative remedies provided and must comply with the deadlines and other procedural rules prior to filing a federal lawsuit relating to the conditions of his confinement. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). *See also Jones v. Bock*, 549 U.S. at 218 ("to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, – rules that are defined not by the PLRA, but by the prison grievance process itself") (internal quotation marks and citation omitted); *King v. Dingle*, 702 F. Supp. 2d 1049, 1067 (D. Minn. 2010) (in granting defendants' motion for summary judgment, held that the inmate-prisoner's informal use of kites did not satisfy the requirements of the formal grievance procedure, even if the inmate labeled the kites as grievances). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

In support of his argument for dismissal, Defendant Jaeger contends that Mr. Young had ample opportunity to avail himself of the grievance procedures in effect at the El Paso County Jail. The "inmate staff/communication form" used in the El Paso County Jail, copies of which

18

were attached to Mr. Young's Second Amended Complaint, allows the inmate to self-characterize his communication as a "kite," "grievance," "grievance appeal" or "disciplinary appeal." When Mr. Young submitted standard communication forms on July 31, 210, August 7, 2010, August 24, 2010, and September 9, 2010, he certainly had the opportunity to check the "kite" box rather than the "grievance" box. *Cf. Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("the PLRA only requires the exhaustion of 'available' administrative remedies"). The record clearly shows that the required forms were "available" to Mr. Young and thus belies Mr. Young's claim that he repeatedly asked for grievance forms without success.

Plaintiff also contends that he did not pursue his administrative remedies because when he asked Sergeant Bouwens for a grievance form, the Sergeant "told me to shut my damned mouth before I take you to S.D. (special detention) myself." The record shows, however, that Mr. Young submitted communications forms (each marked as a "kite") to Lieutenant Northam on July 31, 2010 and August 7, 2010 in which he complained about Defendant Jaeger's alleged sexual assault. *Cf. Little v. Jones,* 607 F.3d at 1250 (noting that an administrative remedy is "unavailable" where prison officials "prevent, thwart or hinder a prisoner's efforts to avail himself of" that remedy). There is no indication that Mr. Young suffered any reprisals as a result of these complaints. Notwithstanding Sergeant Bouwens' alleged threat, Plaintiff submitted a communication form ("kite") to Bouwens on August 24, 2010 in which he complained about not getting a grievance form to address the Jaeger incident. *Cf. Beltran v. O'Mara*, 405 F. Supp. 2d 140, 150 (D.N.H. 2005) (although the plaintiff-inmate was aware of the established grievance procedure, he merely filed inmate request forms without following up with the available administrative remedies and therefore failed to exhaust as required by the

19

PLRA).  *See also Applewhite v. Bivens*, 717 F. Supp. 2d 68, 72-73 (D.D.C. 2010) (held that

plaintiff had failed to exhaust available administrative remedies by submitting an informal

resolution form and then not pursuing formal grievance procedures).

      "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not

required to specially plead or demonstrate exhaustion in their complaints.' " *Roberts v. Barreras*,

484 F.3d 1236, 1240 (10th Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. at 216 and citing

*Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223 (10th Cir. 2007)).  "[T]he burden of proof for the

exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."

*Roberts v. Barreras*, 484 F.3d at 1241.  Dismissal under § 1997e(a) for failure to exhaust

administrative remedies therefore usually cannot be made on pleadings without proof.  *See*

*Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) ("'only in rare cases will a district

court be able to conclude from the face of the complaint that a prisoner has not exhausted his

administrative remedies and that he is without a valid excuse'") (quoting *Aquilar-Avellaveda v.*

*Terrell*, 478 F.3d at 1225)).  In this instance, however, the very documentation that Plaintiff

elected to attach to his Second Amended Complaint demonstrates that administrative remedies

were available and simply not pursued.  Based upon the available record and the prevailing case

law, Defendant Jaeger's exhaustion argument has merit and might well justify dismissing the

Fourth Claim for Relief.  However, the exhaustion issue becomes academic given Mr. Young's

failure to adequately allege a claim against Defendant Jaeger.

      The court has noted that as a pretrial detainee, Mr. Young was protected by the Due

Process Clause of the Fourteenth Amendment to the same extent that the Eighth Amendment

protects convicted criminals from unconstitutional conditions of confinement.  *Cf. Bass v.*

*Pottawatomie County Public Safety Center,* 2011 WL 2193835, at *5 (10th Cir. 2011). Certainly,

the Eighth Amendment encompasses an inmate's "constitutional right to be secure in her [or his]

bodily integrity and free from attack by prison guards." *Smith v. Cochran*, 339 F.3d 1205, 1212

(10th Cir. 2003) (internal quotation marks and citation omitted). "The right to be secure in one's

bodily integrity includes the right to be free from sexual abuse." *Id.* at 1212 (citing *Barney v.*

*Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998) (holding that "plaintiffs' deprivations resulting

from the sexual assaults are sufficiently serious to constitute a violation under the Eighth

Amendment")). "It is clearly established that prison guards employed by the state can be liable

under the Eighth Amendment for using excessive force against prisoners in the form of sexual

abuse." *Id.* at 1215 (citation omitted).

    To assert an Eighth Amendment claim, a plaintiff must satisfy a two-prong test:  (1) that

the deprivation suffered or the conduct challenged was "objectively 'sufficiently serious,'" and

(2) that the defendant had a sufficiently culpable state of mind or was "deliberately indifferent"

to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). *See also Allen v. Zavaras*,

2011 WL 2794075, at *2 (10th Cir. 2011). The objective component of the Eighth Amendment

test requires Mr. Young to show he was subjected to official conduct or physical force that rose

to the level of cruel and unusual punishment, because "not . . . every malevolent touch by a

prison guard gives rise to a federal cause of action." *Martin v. Creek County Jail*, 2010 WL

4683852, at *4 (N.D. Ok. 2010) ("The Eighth Amendment prohibition . . . necessarily excludes

from constitutional recognition de minimis uses of physical force, provided that the use of force

is not of a sort repugnant to the conscience of mankind."). To satisfy the subjective component

of the Eighth Amendment test, Mr. Young must allege facts to show Defendant Jaeger had the

culpable state of mind known as "deliberate indifference," which requires a higher degree of fault than negligence or even gross negligence. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). "When no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).

At this juncture, the court must accept as true the well-pled factual allegations set forth in the Second Amended Complaint and I have done so. However, even when I liberally construe those allegations, I cannot conclude that Plaintiff has satisfied his burden of asserting a plausible claim under either the Due Process Clause or the Eighth Amendment. Mr. Young contends that he was subjected to unnecessary and unwelcomed sexual touching in the course of a single pat-down search. The Second Amended Complaint acknowledges that Defendant Jaeger's pat-down search had a penological purpose associated with removing Mr. Young from his cell in conjunction with a visit to the law library. There is no indication that Defendant Jaeger coupled his search with offensive sexual remarks. While the court does not discount the unpleasant nature of the pat-down procedure, there is no suggestion that this incident caused any physical injury to Mr. Young.

Under comparable facts, several courts have declined to find an Eighth Amendment violation. *See, e.g., Hughes v. Smith*, 237 Fed. Appx. 756, 759 (3rd Cir. 2007) (held that the inmate-plaintiff had not alleged an Eighth Amendment violation where the correctional officer-defendant allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); *Pantusco v. Sorrell*, 2011 WL 2148392, at 87-8 (D. N.J. 2011) (the plaintiff-inmate

22

alleged that he was the victim of a sexual assault where the defendant correctional officer groped his genitals during a routine pat frisk; held that plaintiff's Eighth Amendment claim failed because a single instance of groping does not amount to cruel and unusual punishment); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1278 and 1295-96 (D. Colo. 2009) (held that the suggestive, sexual touching alleged by the inmate-plaintiff did not state an Eighth Amendment violation by the defendant guard). *Cf. Martin v. Creek County Jail*, 2010 WL 4683852, at *4 (N.D. Ok. 2010) and cases cited therein. Based upon the allegations in the Fourth Claim for Relief, I conclude that Mr. Young has not presented sufficient facts to satisfy either the objective or subjective prongs of an Eighth Amendment claim. *Compare Watson v. Jones*, 980 F.2d 1165, (8th Cir. 1992) (held that the trial court improperly granted summary judgment in favor of a female correctional officer where the record showed the defendant had subjected the male plaintiff to physically intrusive pat-down searches almost daily over a two month period) and *Walker v. Taylorville Correctional Center*, 129 F.3d 410, 414 (7th Cir. 1997) (reversed the trial court's dismissal of plaintiff' Eighth Amendment claim where plaintiff's alleged his prison counselor had sexually harassed him on three separate occasions). Accordingly, I recommend that this claim be dismissed.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (doc. #79) be GRANTED as to the Fourth Claim for Relief and that Defendant Jaeger be dismissed with prejudice from this action. The court further RECOMMENDS that Defendants' Motion to Dismiss be denied as to the Third Claim for Relief against Defendant Brock.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real*

*Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

right to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir.

1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite

the lack of an objection does not preclude application of the "firm waiver rule");  *International*

*Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th

Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-

claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980

F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right

to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116,

1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

review).

DATED this 15th day of August, 2011.

BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge